UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Evonne A. Page,

    Plaintiff,

    v.     Civil Action No. 5:11-CV-187

Vermont Department of Corrections,
Samantha Clark,

    Defendants.

## **REPORT AND RECOMMENDATION**
(Doc. 11)

Plaintiff Evonne Page brings this action claiming that she was incarcerated in violation of her rights under the Americans with Disabilities Act (ADA) and her "civil and constitutional rights." Pending before the court is Defendants' motion to dismiss, which argues that Ms. Page has failed to state a claim for which relief may be granted. Defendants Vermont Department of Corrections (DOC") and Probation and Parole Officer Samantha Clark are represented by Assistant Attorney General Emily Carr. Ms. Page is representing herself. The motion to dismiss is unopposed.

For the reasons set forth below, I recommend that Defendants' motion to dismiss be GRANTED, and that this case be DISMISSED with leave to amend.

## **Factual Background**

The Complaint alleges that on August 29, 2008, Ms. Page was removed from a rehabilitation program known as RISE (Recovery in an Independent, Sober Environment) after she complained of sexual harassment by a fellow RISE participant. Ms. Page has

attached to her Complaint a copy of an e-mail sent to Defendant Clark, apparently from someone at RISE, stating:

> I spoke with Evonne during case management yesterday in regards to her claims of sexual accusations received from another resident back in June. Her story is not consistent as was reported to another case manager on 8/24/08 and 8/25/08. She continues to claim the incident(s) took place, however last night reported it was more of a "joking gesture" and stated that[']s just how he is. Evonne has continued to report to staff on several occasions her fear for safety, she has reported this to myself, stated it during Wednesday women[']s group, and reported it to staff this morning. Staff has questioned other residents during investigation of these claims and have found no grounds for discharge of the other resident. Evonne's repeated complaints of safety issues warrant concerns in her continuing treatment at RISE. After today[']s meeting with staff and Director it is recommended that Evonne find an alternate program to better suit her safety needs.

(Doc. 4-1 at 1.) Ms. Page claims that she "pleaded" with RISE Director James Henzel to allow her to travel to a different treatment center for "help and medications," but that Mr. Henzel instead ordered her to report directly to Defendant Clark at Probation and Parole. (Doc. 4 at 4-5.)

While residing at the RISE program, Ms. Page was on Pre-Approved Furlough through the DOC. One condition of her furlough was an approved residence. Because the RISE location had been her approved residence, her removal from RISE meant that she was in violation of the terms of her furlough. A letter to Ms. Page from DOC Program Services Clinical Specialist Kim Bushey explained as follows:

> In reviewing your case notes, you were originally granted Pre Approved Furlough status and your probation cases were left unviolated in hopes that you would be able to stabilize in the community. The PAF status was in lieu of an incarcerative sentence but did require compliance with the conditions of the furlough, including approved residence. In reviewing the case notes, it appears that the loss of the RISE residence was based upon your behavior, to include accusations against other residents which were investigated and unsubstantiated. The transfer to Brattleboro was due to earlier loss of

2

> residence at Dismas House in Rutland within the year . . . . Since your PAF status has been revoked, I encourage you to use the mental health and substance use services available to you, to continue to improve your management of those symptoms and behaviors so you may be more successful in the future.

(Doc. 4-1 at 2.)

The Complaint alleges that Defendant Clark failed to conduct any sort of investigation into Ms. Page's "complaints." (Doc. 4 at 5.) The Complaint also alleges that Defendant Clark denied Ms. Page's request to "look into alternate housing or treatment." After leaving the RISE program, Ms. Page served 367 days in prison for her probation violation. *Id.*

Ms. Page filed her Complaint in this case on July 28, 2011. Her primary claim is that she was discriminated against based upon her mental health needs, and that Defendants failed to provide her reasonable accommodations as allegedly required under the ADA. The Complaint also alleges that Ms. Page's "freedoms" were wrongfully "taken away," thus suggesting a potential due process claim. For relief, Ms. Page seeks $75,000 in compensatory damages for "false imprisonment for 367 days, personal injury, worsened PTSD, depression, anxiety, fear of authority, loss of income, freedoms, time with children, [and] effects on family." *Id.* at 5-6.

## Discussion

### I. Standard of Law.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim must contain

"more than an unadorned, the-defendant-unlawfully-harmed me accusation," and must instead plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When reviewing a complaint under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and "draw[ ] all inferences in the plaintiff's favor ." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks and citation omitted). This presumption of truth does not extend to legal conclusions. *See Iqbal*, 129 S. Ct. at 1949-50 (citation omitted). Given that Ms. Page is proceeding *pro se*, the court must also "construe [her Complaint] broadly and interpret it to raise the strongest arguments it suggests." *Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004) (citation omitted).

As noted above, Defendants' motion to dismiss is unopposed. Nonetheless, a plaintiff's failure to oppose a Rule 12(b)(6) motion does not by itself merit dismissal of a complaint. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). As explained by the Second Circuit, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Goldberg*, 599 F.3d at 184 (citing *McCall*, 232 F.3d at 322-23).

## II. ADA Claims.

### A. Individual Capacity Claims.

Defendants first argue that Ms. Page cannot bring an ADA claim against Defendant Clark in Clark's individual capacity. Although not specifically pled in the Complaint, Ms. Page appears to be filing her claim under Title II of the ADA, which provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. While the Supreme Court has held that Title II of the ADA extends to prisons, *see Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998), the ADA does not provide for liability against defendants in their individual capacities. *See Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Consequently, any ADA claim being brought against Defendant Clark in her individual capacity fails as a matter of law.

### B. Eleventh Amendment Immunity.

The viability of Ms. Page's damages claims against Defendant Clark in Clark's official capacity, and claims against the DOC itself, is "[l]ess amenable to a tidy answer." *Cole v. Goord*, 2009 WL 2601369, at *4 (S.D.N.Y. Aug. 25, 2009). In general, suits against a state or its employees in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). However, Congress may abrogate a state's immunity by making "its intention to abrogate unmistakably clear in the language of the statute," and by acting "pursuant to a valid exercise of its power under

§ 5 of the Fourteenth Amendment." *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).

In *Garcia*, the Second Circuit determined that "[g]overnment actions based on discriminatory animus or ill will towards the disabled are generally the same actions that are proscribed by the Fourteenth Amendment -- *i.e.*, conduct that is based on irrational prejudice or wholly lacking a legitimate government interest." 280 F.3d at 111-12. Because a ban on this sort of conduct "comport[s] with Congress's § 5 authority," the Second Circuit held that a plaintiff making such a claim could seek monetary damages against the states. *Id.* at 111.

Since the *Garcia* ruling, however, two Supreme Court decisions have called into question whether the "discriminatory animus or ill will" standard is still applicable. Specifically, in *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court allowed a private cause of action for damages under Title II where the plaintiff claimed that his right of access to the courts had been violated. Subsequently, in *United States v. Georgia*, 546 U.S. 151 (2006), the Court permitted a private cause of action for conduct that "actually violates the Fourteenth Amendment." 546 U.S. at 159. In doing so, the *Georgia* decision left it for lower courts to determine,

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

546 U.S. at 158-59.

District courts in this circuit "have come to different conclusions as to whether

6

*Garcia* is still good law in light of *Lane* and *Georgia*." *Cole*, 2009 WL 2601369, at *7 (citing cases). The Second Circuit has not ruled on the question. *See Bolmer v. Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010) ("Whether or not *Garcia* survives *Lane* and *Georgia*, a question we do not reach . . . ."). This court, too, should decline to "delve into these deep constitutional waters," since Ms. Page's ADA claim fails for other reasons. *Cole*, 2009 WL 2601369, at *7. I therefore recommend that the court proceed to Defendants' remaining arguments.

C. **The Merits.**

Defendants next argue that Ms. Page has failed to state a claim under the ADA. Specifically, they claim that it was Mr. Henzel who terminated Ms. Page from the RISE program, and that they were not involved in that decision. The Complaint also alleges, however, that Defendant Clark denied Ms. Page's request for alternative housing or treatment. The court must therefore consider whether that denial gave rise to a plausible claim under the ADA.

To state a *prima facie* claim under Title II of the ADA, a plaintiff must allege: "(1) that [s]he is a 'qualified individual' with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted); *see also Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003). Defendants do not dispute that Mr. Page was a qualified individual with a disability. Nor do they contend that furlough and rehabilitative programming are not "services, programs or

activities" under the ADA. Their argument instead focuses on the fact that they were not responsible for Ms. Page's termination from the RISE program. Defendants essentially contend that the revocation of Ms. Page's furlough was a response to her loss of residence and programming at RISE, and had nothing to do with her underlying disability.

Ms. Page alleges that Defendant Clark denied her additional programming and continued furlough, and that those requests would have constituted a "reasonable accommodation." However, the Complaint does not provide any facts to suggest that Ms. Page's furlough was revoked, and that additional treatment options were denied, *because* of her disability. Instead, the Complaint merely alleges that Defendant Clark identified Ms. Page as being in violation of her probation, and denied her "request to look into alternate housing or treatment." (Doc. 4 at 5.)

Documents attached to the Complaint accuse RISE Director Henzel of making statements that "establish discriminatory discharge by reason of Plaintiff's disability and it[]s symptoms." (Doc. 4-1 at 8.) Those documents appear to have been part of a previous lawsuit against Mr. Henzel and Phoenix House of New England. (*Id.* at 5-12.) No such specific allegations are levied against Defendant Clark or the DOC.

The law in this circuit is that an ADA plaintiff must demonstrate that she was denied benefits "because of a disability." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir. 2003) (referencing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 601 (1999) (Kennedy, J., concurring)). The allegations in this case assert no such claim. Indeed, "[a]side from giving conclusory statements that [her] request" for additional programming and continued furlough was discriminatory, Ms. Page "does not give any reason or

indication" that Defendant Clark or the DOC revoked her furlough on the basis of a disability. *Andino v. Fischer*, 698 F. Supp. 2d 362, 380 (S.D.N.Y. 2010) (dismissing ADA claim under Rule 12(b)(6) where inmate made only conclusory allegations that he was denied public services due to his post-traumatic stress disorder). Her ADA claim should therefore be DISMISSED, with leave to re-plead as set forth below.

## III. Constitutional Claim.

The Complaint is even more lacking with respect to any sort of constitutional claim. Ms. Page alleges generally that her "civil and constitutional rights were indeed violated" and her "freedoms were taken from" her. (Doc. 4 at 5.) She claims that these violations were "based on mental health needs," thus suggesting an ADA claim rather than a cause of action under the United States Constitution. Nonetheless, in giving Ms. Page's *pro se* Complaint the required liberal reading, Defendants allow for the possibility of a procedural due process claim under the Fourteenth Amendment.

If Ms. Page does intend to bring a procedural due process claim, she needs to assert that she was deprived of a protected liberty interest, as well as constitutionally-required procedural safeguards. *See, e.g., Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004); *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001). The Complaint does not set forth any facts to support such a claim. More specifically, the general allegation that Ms. Page was deprived of "freedoms" does not provide enough factual background to "nudge" her claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 129 S. Ct. at 1949 ("[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do") (quoting *Twombly*, 550 U.S. at

557).

Furthermore, with respect to any constitutional claims against the DOC and Defendant Clark in an official capacity, those claims are barred by the Eleventh Amendment. As noted above, the Eleventh Amendment generally prohibits plaintiffs from recovering damages from states and state officials in their official capacities. *See Graham*, 473 U.S. at 169; *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) ("a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment"). This principle also applies to state agencies. *See Davis*, 316 F.3d at 101 (recognizing that Eleventh Amendment immunity applies to Department of Corrections). Exceptions to this general rule apply when there has been an explicit and unequivocal waiver of immunity by a state, or a similarly clear abrogation of the immunity by Congress. *See Graham*, 473 U.S. at 169; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

Here, there has been no relevant waiver of immunity by the State of Vermont. In fact, the Vermont Legislature has specifically preserved the State's immunity under the Eleventh Amendment. *See* 12 V.S.A. § 5601(g). It is also well settled that Congress did not abrogate state sovereign immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 340-42 (1979). Accordingly, and because Ms. Page's sole requested remedy is an award of damages, her claims against the DOC and Defendant Clark in an official capacity are barred.

With respect to any potential constitutional claim against Defendant Clark in her individual capacity, the Complaint does not allege that Clark was personally involved in

depriving Ms. Page of her "freedoms." (Doc. 4 at 5.) "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Although Ms. Page may have met with Defendant Clark upon leaving the RISE program, the state court docket indicates that Probation Officer Allison Dydo filed the violation of probation. (Doc. 11-1 at 6); *see Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (court may look to public records in deciding motion to dismiss). Without additional allegations connecting Defendant Clark to Ms. Page's re-incarceration, the constitutional claim being brought against Ms. Clark should not stand.

For each of these reasons, I recommend that Ms. Page's constitutional claim be DISMISSED.

## IV. Leave to Amend.

The Second Circuit has emphasized that a district court should not dismiss a *pro se* filing "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). "[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008). Here, Ms. Page may have a basis for claiming that Defendants violated her rights, whether

under the ADA, the United States Constitution, or both.[1]  I therefore recommend that, in conjunction with the dismissal of her claim, Ms. Page be granted leave to re-plead her claims.

If Ms. Page chooses to submit an amended filing, the filing shall be entitled "Amended Complaint" and must contain all claims against all parties, as it will supersede the original Complaint in all respects.  The court should also require that the Amended Complaint be filed within thirty days of its ruling on this Report and Recommendation. Failure to so amend should result in the dismissal of all claims with prejudice.

## **Conclusion**

For the reasons set forth above, I recommend that Defendants' unopposed motion to dismiss (Doc. 11) be GRANTED.  I further recommend that, if this Report and Recommendation is adopted by the court, Ms. Page be allowed thirty days to file an Amended Complaint.  Failure to file an Amended Complaint should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 4th day of May, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

---

[1] Defendants might contend, consistent with arguments set forth in their motion to dismiss, that amendment of the Complaint would be futile under both *Heck v. Humphrey*, 512 U.S. 447 (1994), and the Prison Litigation Reform Act (PLRA).  The Second Circuit has held that *Heck* does not bar a constitutional claim once the plaintiff has been released from custody.  *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001).  Similarly, the PLRA does not apply to inmates who file suit after their release.  *See Grieg v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999).  Here, the court should not bar amendment of the Complaint on the basis of *Heck* and the PLRA, as it is not clear from the Complaint whether Ms. Page was incarcerated when she initiated this case.

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).